# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| AUBURN MANUFACTURING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil 07-19-P-S |
| ) | |
| STEINER INDUSTRIES, W.W. ) | |
| GRAINGER, INC., and LAB SAFETY ) | |
| SUPPLY, INC., ) | |
| ) | |
| Defendants. ) | |

Auburn Manufacturing, Inc. ("Auburn") brought this action against Defendants Steiner Industries ("Steiner"), W.W. Grainger, Inc. ("Grainger") and Lab Safety Supply Inc. ("Lab Safety") asserting that certain representations made regarding Steiner's products are untrue and alleging claims for: false designation of origin (Count I); false advertising (Count II); common law trademark infringement (Count III); Illinois Unfair and Deceptive Trade Practices (Count IV); Wisconsin Unfair and Deceptive Trade Practices (Count V); and unjust enrichment (Count VI).   Now before the Court is Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) on the basis that this Court lacks personal jurisdiction over Steiner and Lab Safety,[1] and under Fed.R.Civ.P. 12(b)(3) on the basis that venue is improper in this district.  (Docket # 15.)  Alternatively, if the Court determines that it has personal jurisdiction over Steiner and Lab Safety, and that venue would be proper in this district, Defendants move under 28 U.S.C. §1404(a) to transfer this action to the Northern District of Illinois, so that it may be consolidated with a declaratory judgment action pending in that district.  (Id.)

---

[1] While Grainger does not contest this Court's exercise of personal jurisdiction over it, Grainger contends that Auburn's claims against it should be dismissed under Fed.R.Civ.P. 12(b)(3), based on improper venue.

## I. JURISDICTIONAL FACTS

Auburn is a Maine corporation with its only place of business in Maine.  (Leonard Dec. ¶ 2.)  Auburn manufactures and sells welding blankets and other heat-resistant products.  (Id. ¶ 3.)  After passing rigorous safety tests, seventeen of Auburn's welding blankets and other heat resistant products have been certified "FM Approved."  (Id. ¶ 5.) Periodically, those products undergo audits, which are necessary to maintain the "FM Approved" designation.  (Id.)  Steiner is a manufacturer and supplier of protective clothing, gloves and welding safety supplies, which competes with Auburn.  Steiner is an Illinois corporation, with its principal place of business located in Chicago, Illinois. (Kramer Dec. ¶ 1.)  Products cannot be ordered directly from Steiner.  Steiner sells its products through distributors such as Grainger and Lab Safety, and through other distributors.  (Id. ¶ 3.)  Steiner maintains a web site, which provides information about its products and its distributors from whom Steiner products can be obtained.  All of Steiner's products are shipped from Steiner's warehouse located at its Illinois headquarters.  (Id.)  Between the period January 1, 2006 and February 28, 2007, Steiner obtained less than one percent (1.0%) of its total gross revenues from the sale of products shipped to distributors in Maine.  (Id. ¶ 13.)

Lab Safety is a Wisconsin corporation, with its principal place of business located in Janesville, Wisconsin.[2]  (Nelson Dec. ¶ 1.)  Lab Safety is a distributor of safety products and industrial supplies, which it sells through its print catalogs and its Internet web site.  (Nelson Dec. ¶ 3.)  Among the products sold by Lab Safety through its catalogs and web site are the welding blanket products manufactured by Steiner.  (Id.)  Lab Safety has distribution centers located in Wisconsin and Connecticut, from which it ships its

---

[2]  Lab Safety is a wholly-owned subsidiary of Grainger.  (Nelson Dec. ¶ 1.)

2

products throughout the United States and abroad.  (Nelson Dec. ¶ 4.)  Lab Safety mails its print catalogs to Maine customers and businesses.   (Leonard Dec. ¶ 16.) Approximately 0.55% of Lab Safety's gross revenues during the period between January 1, 2006 and February 28, 2007, were derived from the sale of products shipped into Maine.  (Nelson Dec. ¶ 16.)

Grainger is an Illinois corporation with its principal place of business located in Lake Forest, Illinois.  (Walker Dec. ¶ 1.)  Grainger is a broad line supplier of facilities maintenance products, which it sells through its network of over 400 United States branches, as well as through its catalogs and its Internet web site.  (Id. ¶ 3.)  Among the products sold by Grainger through its catalogs and web site are the welding blanket products manufactured by Steiner.  (Id.)  Grainger is licensed to do business in Maine and maintains a sales office in Portland, Maine.  (Id. ¶ 8.)

In December 2006 and January 2007, Auburn sent letters to Steiner and Grainger, alleging that they had engaged in false advertising, trademark infringement and unfair trade practices, based on Grainger's purported use of the "FM approved" certification mark and the "Made in USA" designation in connection with welding blanket products manufactured by Steiner and advertised in Grainger's catalog and on Grainger's web site. (Exs. D and E attached to Defendants' Motion to Dismiss.)  In February 2007, Steiner and Grainger filed an action against Auburn in Illinois, seeking a declaratory judgment that their accused activities did not comprise false advertising, trademark infringement or a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. (Ex. F attached to Defendants' Motion to Dismiss.)  On the very same day Steiner and Grainger filed their complaint in the Illinois action, Auburn sent a letter to Lab Safety, alleging that Lab Safety had engaged in acts of unfair competition and/or false advertising, based on

Lab Safety's purported use of the "Made in USA" designation in association with welding blanket products manufactured by Steiner. (Ex. G attached to Defendants' Motion to Dismiss.)  One week later, Auburn filed this action. (Docket # 1.)  Steiner and Grainger subsequently filed an amended complaint in the Illinois action, adding Lab Safety as a party plaintiff and addressing the additional related allegations.  (Ex. I attached to Defendants' Motion to Dismiss.)

## II. PERSONAL JURISDICTION

### A. Legal Standards Applicable to Motions to Dismiss for Lack of Personal Jurisdiction Under Fed.R.Civ.P. 12(b)(2)

The standard which governs a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is well established.  Auburn bears the burden of establishing personal jurisdiction over Defendants.  See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998); Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). "[P]laintiffs may not rely on unsupported allegations in their pleadings," Boit v. Gar-Tec Products, 967 F.2d 671, 675 (1st Cir. 1992), but are "obliged to adduce evidence of specific facts," Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995).  Before trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, plaintiff need only make a prima facie showing.  Id.  If the parties present conflicting affidavits, all factual disputes are resolved in plaintiff's favor, and plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.  See Mass. Sch. of Law, 142 F.3d at 34; Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court shall credit to "facts put forward by the defendants, to the extent that they are uncontradicted."  Mass. Sch. of Law, 142 F.3d at 34.

4

The Court applies a two-part test to analyze Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction over a nonresident defendant.  First, defendant's conduct must fall within a provision of the Maine long-arm statute.  See 14 M.R.S.A. § 704-A. Maine courts construe the long-arm statute liberally to assert personal jurisdiction over nonresident defendants to the full extent permitted by the limitations of due process. Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995)    Second, defendants must have sufficient minimum contacts with Maine to satisfy the constitutional guarantee of due process.  U.S. v. Swiss American Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (court may exercise personal jurisdiction over nonresident defendant only so long as "minimum contacts" exist between defendant and forum state).  The parties seem to agree that the Court's analysis of jurisdiction under the Maine long-arm statute collapses into an analysis of due process, and they present their arguments within this context.

Where, as here, a district court's subject matter jurisdiction is based upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed by the Due Process Clause of the Fifth Amendment.  Swiss Am. Bank, 274 F.3d at 618 (quoting United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1992)).  "A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction."  Swiss Am. Bank, 274 F.3d at 618 (quoting Mass. Sch. of Law, 142 F.3d at 34).  "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities."  Id.  General jurisdiction, on the other hand, exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant nevertheless has engaged in continuous and systematic activity, unrelated to the suit, in the forum state.  Id.  For either

type of jurisdiction, in addition to the existence of sufficient "minimum contacts," the defendant's contacts with the state must be purposeful and the exercise of jurisdiction must be reasonable under the circumstances.  Harlow v. Children's Hospital, 432 F.3d 50, 57 (1st Cir. 2005).

## B. Specific Jurisdiction Analysis

Auburn contends that Steiner and Lab Safety are subject to specific personal jurisdiction in Maine.  Auburn asserts claims against Lab Safety for false designation of origin (Count I), Wisconsin Unfair and Deceptive Trade Practices (Count V), and unjust enrichment (Count VI) based on its advertising Steiner's products as "Made in the USA".  Auburn's claims against Steiner are for false designation of origin (Count I), false advertising (Count II); common law trademark infringement (Count III); Illinois Unfair and Deceptive Trade Practices (Count IV); Wisconsin Unfair and Deceptive Trade Practices (Count V), and unjust enrichment (Count VI) arising out of falsely advertising Steiner's products as "FM approved" and "Made in the USA".  In order for a court to exercise specific jurisdiction over a defendant, three criteria must be met.  First, the court must determine whether the plaintiff's claims directly relate to or arise out of each defendant's contacts with the forum.  Swiss Am. Bank, 274 F.3d at 620-21.  Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws.  Id. at 621.  If the first two criteria are met, then the court must analyze, based on the Gestalt factors, the overall reasonableness of subjecting a nonresident to the authority of a foreign court.  163 Pleasant Street, 960 F.2d at 1088.  "An affirmative finding on each of these three elements is required to support a finding of specific jurisdiction."  Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

6

### 1. Lab Safety

As noted above, Lab safety is a Wisconsin corporation with its principal place of business located in Janesville.  (Nelson Dec. ¶ 1.)  Lab Safety is a distributor of safety products and industrial supplies, which it sells through its print catalogs and its Internet web site.  (Id. ¶ 3; Leonard Dec. ¶¶ 11-12, 16.)  Among the products sold by Lab Safety through its catalogs and web site are the welding blanket products manufactured by Steiner that Plaintiff alleges were falsely advertised.  ((Nelson Dec. ¶ 3.)  Lab Safety has two distribution centers one located in Wisconsin and one in Connecticut, and all shipments of products by Lab Safety are made from those distribution centers or are drop shipped directly from suppliers.  Lab Safety ships its products throughout the United States and abroad.  (Id. ¶ 4.)  However, Lab Safety is not licensed to do business in Maine; does not have a registered agent for service of process in Maine; does not maintain an office in Maine; does not have any employees in Maine; does not have any business records located in Maine; does not maintain any bank accounts, telephone, telex or telefax numbers, or mailing addresses in Maine; and does not own or lease any real property in Maine.  (Id. ¶¶ 6-14.)

Auburn argues that Lab Safety's interactive web site and the distribution of its print catalogs in Maine, which allow Maine residents to purchase products directly from Lab Safety, satisfy the contacts necessary to establish specific personal jurisdiction in Maine.   In addition, Plaintiff points to the fact that during the relevant period approximately 0.55% of Lab Safety's gross revenues were derived from the sale of products shipped into Maine.  (Id. ¶ 16.)

Auburn's jurisdictional argument requires the Court to consider the appropriate reach of personal jurisdiction in the Internet context.  "Unlike newspaper, mailing, radio,

television and other media containing advertisements and solicitations, most Internet advertisements and solicitations are not directed at a specific geographic area[] or market[]; to the contrary, advertising on the Internet targets no one in particular and everyone in particular in any given geographic location." Millennium Enterprises., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 914 (D. Or. 1999); see also Reno v. American Civil Liberties Union, 521 U.S. 844, 851 (1997) (noting that "cyberspace" is accessible to anyone, located anywhere, with Internet connection). The extensiveness of Internet use makes it a unique form of communication and conducting business. A number of years ago, the United States Supreme Court noted that federal courts should be conscious of changes in technology, communication and transportation when conducting a personal jurisdiction analysis. Hanson v. Denckla, 357 U.S. 235, 250-51 (1958). At that time, however, the Court rejected the position that technological advances will lead to "the eventual demise of all restrictions on the personal jurisdiction of state courts." Id. at 251.

The Court of Appeals for the First Circuit has not yet decided a personal jurisdiction case in the Internet context.[3]  However, in discussing the Internet in the

---

[3] Mindful of the potential effect that the Internet could have on the law of personal jurisdiction, courts have struggled to determine the appropriate test for personal jurisdiction where contacts with the forum state are primarily through the Internet. The most often cited of these tests was first enunciated in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). The court in Zippo concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. at 1124. The court then set out a sliding scale of web site interactivity to determine whether personal jurisdiction should be exercised. On one end of the spectrum are defendants that "clearly" conduct business over the Internet. In other words, the "defendant enters into contacts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet...." Id. At this end, personal jurisdiction is proper. At the opposite end of the spectrum are defendants whose web sites are "passive," meaning that the "defendant has simply posted information on an Internet web site which is accessible to users in foreign jurisdictions." Id. In this situation, personal jurisdiction is not proper. In the middle are defendants whose websites allow Internet users to interact with the web site by exchanging information. Whether personal jurisdiction should be asserted over defendants falling into this middle ground, the court concluded, depends on "the level of interactivity and commercial nature of the exchange of information that occurs on the Website." Id. Many courts have employed the sliding scale approach laid out in Zippo

context of subject matter jurisdiction, the First Circuit has stated that "the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum." McBee v. Delica Co., Ltd., 417 F.3d 107, 124 (1st Cir. 2005) (citing Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-50 (7th Cir. 2004) and ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 713-15 (4th Cir. 2002)). The Court went on to state that

> [s]omething more is necessary, such as interactive features which allow the successful online ordering of the defendant's products. The mere existence of a web site does not demonstrate that a defendant is directing its business activities towards every forum where the web site is visible. Given the omnipresence of Internet web sites today, allowing personal jurisdiction to be premised on such a contact alone would seem to "eviscerate" the limits on a state's jurisdiction over out-of-state or foreign defendants.

Id. (citing Jennings, 383 F.3d at 549-50).

### a. Relatedness

The Court does not have to decide whether Lab Safety's interactive web site alone, which permits customers in Maine to order products directly from Lab Safety, is sufficient to establish personal jurisdiction. In this case, Lab Safety also mails print

---

in personal jurisdiction cases involving Internet contacts. See, e.g., Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452-54 (3d Cir. 2003); ALS Scan v. Digital Serv. Consultants, Inc., 293 F.3d 707, 714 (4th Cir. 2002); Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002); Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002); Soma Medical Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1296-97 (10th Cir. 1999); Multi-Tech Systems, Inc. v. VocalTec Communications, Inc., 122 F.Supp.2d 1046, 1050 (D. Minn. 2000); Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1229-30 (S.D. Fla. 2000); Dagesse v. Plant Hotel N.V., 113 F. Supp. 2d 211, 221 (D. N.H. 2000).

Zippo is instructive, but the Court is reluctant to adopt the Zippo test because it is not clear why a website's level of interactivity should necessarily be determinative on the issue of personal jurisdiction. A court cannot determine whether personal jurisdiction is appropriate simply by deciding whether an Internet web site is "passive" or "interactive." Even an "interactive" or commercial website may not be sufficient to support jurisdiction if it is not aimed at residents in the forum state. See GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343, 1349-50 (D.C. Cir. 2000). On the other hand, a "passive" website may support a finding of jurisdiction if the defendant used its web site intentionally to harm the plaintiff in the forum state. See Panavision International, LP v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998). Moreover, regardless how interactive a web site is, it cannot form the basis for specific jurisdiction unless a nexus exists between the web site and the cause of action.

catalogs to Maine customers and businesses.  Auburn's false designation of origin claim relates directly to Lab Safety's catalog distribution in Maine.  Catalogs sent to Lab Safety's current and potential Maine customers advertised the Steiner blankets which Auburn claims carried a the false designation of origin "Made in the USA."  (Leonard Dec. ¶ 16.)  Although Lab Safety broadly asserts that it has not specifically targeted the Maine market with advertising (Nelson Dec. ¶ 14), it does not dispute that it controls where its print catalogs are sent and who receives them.  (Leonard Dec. ¶ 16.)  Indeed, Lab Safety does not dispute that its print catalogs containing the Steiner products, which are alleged to include the false designation of origin as "Made in the USA," were distributed in Maine.  (Id.)  Thus, Lab Safety's marketing efforts are directed at particular customers that permit it to attain a greatest benefit from its directed advertising in Maine.

The evidence in the record on this motion indicates that Lab Safety has specifically directed its print catalogs toward the Maine consuming public.  Through those catalogs, the products that are alleged to bear the false designation of origin were marketed and Maine residents were able to order those products directly from Lab Safety.  Thus, Auburn's false designation of origin claim is clearly "related to" Lab Safety's contacts with Maine in the form of its catalog distribution and related efforts to make retail sales in Maine of the allegedly offending products.  See Sollinger v. Nasco Int'l Inc., 655 F. Supp. 1385, 1388 (D. Vt. 1987) (holding that "[i]n sending its catalogs into Vermont to solicit sales and in actually entering into a transaction with a Vermont resident, though that transaction may not have been completed, [defendant] has purposefully directed [its] activities at residents of the forum and this litigation results from alleged injuries that arise out of or relate to those activities.") (internal quotations marks and citations omitted).

**b. Purposeful Availment**

The purposeful availment prong of the personal jurisdiction test is satisfied if a defendant has performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.  Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) ("a purposeful availment of the privilege of conducting activities in [Maine], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before [the] court foreseeable").  The solicitation of business in the forum state that results in business being transacted can be considered purposeful availment.  Auburn has demonstrated that Lab Safety's in-state activities "represent a purposeful availment of the privilege of conducting business" in Maine.  163 Pleasant St., 960 F.2d at 1089.

While there is no evidence that any of the Steiner products that carried the alleged false designation of origin were purchased in Maine, Lab Safety advertised, promoted, and sold its products directly through its catalogs to Maine residents.  Lab Safety's catalog distribution constituted an offer to sell the falsely designated products in Maine and a purposeful invocation by Lab Safety of the benefits and protections provided by Maine.  Moreover, Lab Safety's marketing efforts in Maine have resulted in sales of its products in Maine.  The evidence establishes that during the relevant time period a percentage – albeit a small percentage – of Lab Safety's gross profits were derived from catalog and Internet sales in Maine.  Lab Safety has "availed" itself of the Maine market by virtue of its catalog distribution and in sales resulting from such catalog distribution.  Sollinger, 655 F. Supp. at 1386.  Therefore, it should not come as a surprise to Lab Safety that it might be haled into court in this forum based upon that activity.

**c. Gestalt Factors**

Since Auburn has made a prima facie showing of relatedness and purposeful availment, the burden shifts to Lab Safety to convince the court that the Gestalt factors militate against the exercise of jurisdiction.  Coolidge v. Judith Gap Lumber Co., 808 F. Supp. 889, 892 (D. Me. 1992); see also Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (plaintiff "must carry the devoir of persuasion on the elements of relatedness and minimum contacts") (citations omitted).  The Gestalt factors, which make up the third element in the specific jurisdiction analysis, are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

163 Pleasant St., 960 F.2d at 1088 (citations omitted).  Lab Safety has failed to carry its burden of persuasion concerning the Gestalt factors.  In a conclusory manner, Lab Safety asserts that it would be burdensome to require a Wisconsin corporation to litigate in Maine.  That self-evident assertion, without more, is insufficient to raise any significant issue as to the first Gestalt factor.  See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 718 (1st Cir. 1996) (for this factor to assume significance, defendant must allege something "beyond the ordinary cost and inconvenience of defending an action so far from its place of business").

Here, an examination of the Gestalt factors weighs in favor of exercising personal jurisdiction over Lab Safety.  Auburn has a strong interest in litigating the case here as its only place of business is in Maine.  Although Lab Safety will be required to travel from Wisconsin to Maine for the trial, the distance "creates no especially ponderous burden for business travelers."  Pritzker, 42 F.3d at 64 (discussing travel from New York to Puerto Rico); see also VDI Technologies v. Price, 781 F. Supp. 85, 90-2 (D.N.H. 1991)

(California to New Hampshire).  The Court must also give due regard to Auburn's choice to seek relief in Maine.  Kulko v. Super. Ct., 436 U.S. 84, 92 (1978).  In addition, because the Complaint alleges serious harm to a Maine corporation, there can be no question that Maine has a substantial interest in resolving disputes involving the alleged false designation of origin claims of resident corporations.  See e.g., Keeton v. Hustler Magazine Inc., 465 U.S. 770, 776 (1984) ("[I]t is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.").  Finally, no other forum has a greater interest in deciding this case.  These concerns outweigh the burden created by forcing Lab Safety to defend the suit in Maine, especially when it consciously chose to conduct business in Maine and sought monetary or other business advantage from the actions that are now in question.  Therefore, the Court is satisfied that requiring Lab Safety to litigate this case in Maine would be fully consistent with notions of fair play and substantial justice.

### 2. Steiner

As noted above, Steiner is an Illinois corporation with its principal place of business located in Chicago.  (Kramer Dec. ¶ 1.)  Steiner sells its products through distributors such as Grainger and Lab Safety, and through other distributors.  (Kramer Dec. ¶ 3.)  Steiner's web site indicates that customers in Maine can obtain its products by contacting its sales representative for Maine – Mekrut Sales Company, which is located in Connecticut – or by locating a distributor in Maine.  (Leonard Dec. ¶ 15.)  All of Steiner's products are shipped from Steiner's warehouse located in Illinois.  (Id.) Between the period January 1, 2006 and February 28, 2007, Steiner obtained less than one percent (1.0%) of its total gross revenues from the sale of products shipped to Maine.  However, Steiner is not licensed to do business in Maine; does not have a registered

agent for service of process in Maine; does not maintain an office in Maine; does not have any employees in Maine; does not have any business records located in Maine; does not maintain any bank accounts, telephone, telex or telefax numbers, or mailing addresses in Maine; and does not own or lease any real property in Maine.  (Kramer Dec. ¶¶ 5-11.)

### a. Relatedness

Here again, the court must determine whether the Auburn's claims directly "relate to" or "arise out of" Steiner's contacts with Maine.  Auburn asserts that Steiner's intentional efforts to be in the Maine market can serve as the basis for subjecting it to specific personal jurisdiction here.  Specifically, Auburn relies on three types of contacts with Maine: (1) Steiner's Internet site, (2) Steiner's network of sales representatives and distributors in Maine, and (3) Steiner's act of placing a false description of its products in the catalogs of Grainger and Lab Safety.

There is no evidence in the record to support a link between Auburn's claims of false advertising and Steiner's activities in Maine.  Steiner asserts that it has not specifically targeted the Maine market with advertising, and there is no evidence to the contrary.  (Kramer Dec. ¶ 12.)  Indeed, it appears that Steiner's web site, which does not permit an individual to order products, is not in any way specifically directed at Maine.  Following the First Circuit's dicta in McBee, Steiner's passive web site would not serve as a sufficient basis for this Court's exercise of personal jurisdiction.

In addition, Auburn's Complaint fails to even allege that Steiner's web site ever falsely advertised its products.  The only tie Steiner's web site supplies to the jurisdictional analysis in this case is that it facilitates potential customer contact with a sales representative or distributor by providing the location and contact information for those who service the state on behalf of Steiner.  Although Steiner maintains a network of

14

product distributors in Maine, and some of those distributors are alleged to have falsely advertised Steiner products in Maine, there are no allegations that Steiner itself has falsely advertised its products in Maine.  Steiner's shipment of products to distributors in Maine, does not satisfy the relatedness test.  It is the false advertising here in Maine that is necessary to create a nexus to Auburn's claims against Steiner sufficient to conclude that they "relate to" or "arise out of" Steiner's contacts with Maine.

Finally, Auburn's suggestion that personal jurisdiction over Steiner is established based on the allegations that Steiner placed a false description of its products in the Internet web sites and print catalogs of Granger and Lab Safety, which were later disseminated by Grainger and Lab Safety in Maine, is simply wrong.  Personal jurisdiction cannot be established by bootstrapping another party's action onto the conduct of the defendant over which personal jurisdiction is sought.  This is so even if, as is the case here, the Court has personal jurisdiction over the other parties.  Steiner is not subject to specific personal jurisdiction in Maine, inasmuch as there is no nexus between Steiner's forum-based activities and Auburn's claims against it.  Thus, the first prong of the specific jurisdiction inquiry is not met with regard to Steiner.  Auburn's failure to meet the first requirement of the specific jurisdiction inquiry makes it unnecessary for the Court to consider the second and third elements.  The Court will, therefore, grant Defendants' Motion to Dismiss Steiner.

### III. VENUE

### A. Motion to Dismiss for Improper Venue Under Fed.R.Civ.P. 12(b)(3)

A motion seeking dismissal based on improper venue is governed by Fed.R.Civ.P. 12(b)(3).  In cases such as this one where jurisdiction is not based solely on diversity, but

rather is based at least in part on the existence of a federal question, venue is determined

according to 28 U.S.C. §1391(b), which states that:

> A civil action wherein jurisdiction is not founded solely on diversity of
> citizenship may, except as otherwise provided by law, be brought only in
> (1) a judicial district where any defendant resides, if all defendants reside
> in the same State, (2) a judicial district in which a substantial part of the
> events or omissions giving rise to the claim occurred, or a substantial part
> of property that is the subject of the action is situated, or (3) a judicial
> district in which any defendant may be found, if there is no district in
> which the action may otherwise be brought.

With regard to corporations, 28 U.S.C. §1391(c) further provides that, "[f]or purposes of

venue under this chapter, a defendant that is a corporation shall be deemed to reside in

any judicial district in which it is subject to personal jurisdiction at the time the action is

commenced."  Since the Court has personal jurisdiction over both remaining Defendants

Grainger and Lab Safety, venue is also proper in this District.  28 U.S.C. § 1391(1).  The

Court will, therefore, deny Defendants' Motion to Dismiss for Improper Venue.

### B. Motion for Transfer of Venue Under 28 U.S.C. §1404(a)

Defendants move pursuant to 28 U.S.C. §1404(a) to transfer this action to the

Northern District of Illinois, so that it may be consolidated with a declaratory judgment

action pending in that district, captioned Steiner Industries, Inc., et al. v. Auburn

Manufacturing, Inc., Civil Action No. 07-cv-668 (the "Illinois action").  This case is

essentially a "mirror image" of the Illinois action, which involves the identical parties, is

based on the identical underlying facts and involves the identical legal issues.[4]  The

---

[4]  Both actions include the identical parties, namely, Auburn on one side and Steiner, Grainger and Lab
Safety on the other side.  Both actions arise from the identical operative facts, namely (i) the usage of the
"FM Approved" certification mark in Grainger's catalog and website, in association with Steiner's welding
blanket products (Ex. F ¶¶ 11-14, 21attached to Defendants' Motion to Dismiss; Ex. H, ¶¶ 21-24
21attached to Defendants' Motion to Dismiss; Ex. I, ¶¶ 13-18, 27 attached to Defendants' Motion to
Dismiss); and (ii) the usage of the "Made in USA" designation in Grainger's catalog and web site and Lab
Safety's catalog and web site, in association with Steiner's welding blanket products (Ex. F, ¶¶ 16-17, 22;
Ex. H, ¶ 26; Ex. I, ¶¶ 20-22, 28).  Although the Illinois action is one for declaratory judgment, both actions
address the same theories of liability which have been asserted by Auburn against Defendants, including

relevant statutory provision applicable to requests for change of venue provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendants must overcome a strong presumption in favor of Auburn's forum choice, and show "the likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum." Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992) (additional citations omitted).

With respect to the convenience of the parties and witnesses, Defendants assert that the witnesses, who have knowledge regarding the circumstances behind the creation, publication and dissemination of the catalog and web site advertisements at issue here, are in Wisconsin and Illinois. By contrast, Auburn asserts that it's witnesses and records, all found in Maine, are central to the case because Auburn's claims and measure of damages rely on a showing of how the company was harmed. The facts that Defendants attempt to get the Court to focus on are the ones related to the creation of the advertising materials rather than the dissemination of those materials. It is the publication and dissemination of the advertising materials that form the basis of Auburn's claims. The Court sees no reason why it should favor the location for the creation of the marketing materials over the location of the distribution of the materials and the damages caused to a Maine company by the dissemination of the advertisements. Considering the arguments on both sides, the Court finds that at best, the convenience of the parties and availability of witnesses is evenly matched.

---

false advertising (Ex. F, ¶¶ 21-22; Ex. H, ¶¶ 36-42; Ex. I, ¶¶ 27-28); false designation of origin (Ex. H, ¶¶ 30-35; Ex. I, ¶ 28); trademark infringement (Ex. F, ¶¶ 15, 21; Ex. H, ¶¶ 43-47; Ex. I, ¶¶ 19, 27); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ex. F, ¶¶ 21-22; Ex. H, ¶¶ 48-54; Ex. I, ¶¶ 27-28); violation of the Wisconsin Unfair and Deceptive Trade Practices Act (Ex. H, ¶¶55-59; Ex. I, ¶ 28); and unjust enrichment (Ex. H, ¶¶ 60-62; Ex. I, ¶ 29).

Defendants assert that this case should be transferred to the Northern District of Illinois, where the declaratory judgment action they filed against Auburn is pending. Defendants rely heavily on the fact that they filed the Illinois declaratory judgment action approximately one week before Auburn filed the instant action.  As this Court recently observed, the "first–to–file" rule is not well established in the First Circuit, and should not serve as a basis for this Court to exercise its discretion to grant a motion to dismiss or transfer based on that rule when the first–filed lawsuit is an anticipatory lawsuit.  See Angela Adams Licensing, LLC v. Dynamic Rugs, Inc., 463 F. Supp. 2d 82, 86 (D. Me. 2006).  The Court is concerned that the lack of personal jurisdiction over Steiner may not allow for an efficient resolution of this case here in Maine and, thus, the interest of justice may weigh in favor of transferring this case to Illinois where the two actions could be consolidated.  The Court is, however, unable to ascertain from the record whether the Illinois court has personal jurisdiction over Auburn.  Defendants have failed to convince the Court of the availability of an alternative forum to resolve the claims against all the parties to this case.  Accordingly, the Court will deny Defendants' Motion to Transfer Venue to the Northern District of Illinois.[5]

## IV. CONCLUSION

The Court ORDERS that Defendants' Motion to Dismiss pursuant to Rule 12(b)(2) be, and it is hereby, GRANTED with respect to Steiner and DENIED with respect to Lab Safety.  The Court further ORDERS that  Defendants Grainger and Lab Safety's Motions to Dismiss pursuant to Rule 12(b)(3) and for Transfer of Venue pursuant to 28 U.S.C. § 1404(a) be, and they are hereby, DENIED.  The Court further

---

[5] The Court is aware that the net result of its decision not to grant Defendants' Motion to Transfer Venue  is that Auburn cannot resolve all of its claims against all the Defendants in this suit in Maine.  The Court notes, however, that Auburn is free to file counterclaims in the Illinois action which will allow it to fully litigate its claims.

ORDERS that Plaintiff's Motion to Submit Supplemental Authority be, and it is hereby,

GRANTED.[6]

      SO ORDERED.

                  /s/ George Z. Singal
                  Chief United States District Judge

Dated this 28th day of June, 2007.

---

[6] Plaintiff has filed a Motion to Submit Supplemental Authority.  (Docket # 22.)  The Court has reviewed the Motion and Judge Darrah's Memorandum Opinion and Order dated June 22, 2007 attached thereto, as well as Defendant's Response to Plaintiff's Motion to Supplement.  (Docket #s 22 and 23.)